**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| The Baptist Home of Philadelphia d/b/a | ) | |
| Deer Meadows Retirement Community, | ) | Case No. 14-13305 (ELF) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ──────────────────────────── | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| The Baptist Home Foundation, | ) | Case No. 14-13306 (MDC) |
| | ) | |
| Debtor. | ) | **Proposed Interim Hearing Date: April 29, 2014** |
| | ) | **Proposed Interim Objection Deadline: At Hearing** |
| | ) | **Proposed Final Hearing Date: May 13, 2014** |
| | ) | **Proposed Final Objection Deadline: May 12, 2014 at 4:00 p.m.** |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I)
AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II)
GRANTING ADEQUATE PROTECTION IN CONNECTION THEREWITH
PURSUANT TO 11 U.S.C. § 361, (III) SCHEDULING A FINAL HEARING PURSUANT
TO FED. R. BANKR. P. 4001, AND (IV) GRANTING RELATED RELIEF**

The Baptist Home of Philadelphia d/b/a Deer Meadows Retirement Community (the "Home") and The Baptist Home Foundation (the "Foundation" and together with the Home, the "Debtors") respectfully file this motion (the "Motion") for entry of an interim order (the "Interim Order"), substantially in the form attached as Exhibit "A" hereto, (a) authorizing use of cash collateral on an interim basis pending a final hearing on the Motion (the "Final Hearing"); (b) granting, pending the Final Hearing, adequate protection to U.S. Bank National Association, in its capacity as Trustee with regard to the Debtors' secured bond indebtedness (the "Trustee") in connection therewith; (c) scheduling the Final Hearing for entry of a final order, substantially in the form attached as Exhibit "B" hereto, authorizing use of cash collateral (the "Final Order"); and (d) granting related relief. In support of the Motion, the Debtors respectfully state as follows:

## I.    DISCLOSURES PURSUANT TO LOCAL RULE OF BANKRUPTCY PROCEDURE 1002-4

1.    Rule 1002-4 of the Local Rules of Bankruptcy Procedure for the Eastern District of Pennsylvania (the "Local Rules") requires that certain provisions that are to be included in an interim cash collateral order be highlighted at the beginning of a motion for such order, in bold face type.  Such provisions include, *inter alia*:

a.    provisions or findings of fact which relate to the validity, perfection, or amount of the secured party's lien or the amount of outstanding debt and are binding on parties in interest, other than the debtor or signatories to any agreement for which court approval is requested;

b.    provisions or findings of fact which relate to relative priorities of a secured party's lien and the liens held by persons who are not parties to the loan transaction, for example, an order providing that the secured party's lien is a first priority lien, and are binding on parties in interest, other than the debtor or signatories to any agreement for which court approval is requested;

c.    waivers of rights under Section 506(c);

d.    releases of liability for the creditor's alleged pre-petition torts or breaches of contract;

e.    waivers of avoidance actions arising under the Code or other applicable law; and

f.    automatic termination or modification of the Section 362 stay on default, conversion to chapter 7, or appointment of a trustee.

See Local Rule 1002-4.

2.    The proposed Interim Order attached as Exhibit "A" hereto (the "Proposed Interim Order") includes several such provisions which are subject to the special disclosure requirements of the Local Rules.  The full text of these provisions is as follows:

i.    **Subject to entry of the Final Order, the Debtors hereby waive (a) the "equities of the case" exception under section 552(b) of the Bankruptcy Code, (b) the right to surcharge the Collateral under section 506(c) of the Bankruptcy Code, and (c) the right to invoke the equitable doctrine of "marshaling" or any other similar doctrine with respect to the Collateral, the Adequate Protection Collateral (as hereinafter defined) or otherwise.**

2

See Proposed Interim Order, ¶ D(13).

ii.     **Each Debtor and its affiliates, in its individual capacity hereby forever releases, waives, and discharges the Trustee, together with its respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Bond Documents, any aspect of the prepetition relationship between any Debtor, on the one hand, and any or all of the Released Parties, on the other hand, or any other acts or omissions by any or all of the Released Parties in connection with any of the Bond Documents or their prepetition relationship with any Debtor or any affiliate thereof, including, without limitation, any claims or defenses as to the extent, validity, priority, or perfection of the Liens, "lender liability" claims, causes of action, any actions, claims, or defenses under chapter 5 of the Bankruptcy Code, claims to invalidate, subordinate, recharacterize, disallow or otherwise challenge the Obligations, claims to surcharge the Collateral, any requirement that the Trustee marshal the Collateral, any claim pursuant to section 552 of the Bankruptcy Code, including the "equities of the case" exception, or any other claims and causes of action (collectively, the "Claims and Defenses").**

See id., ¶ D(14).

iii.    **No administrative expense claims, including Professional Fees, shall be charged or assessed against or recovered from the Collateral or the Adequate Protection Collateral (including the Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or otherwise by, through, or on behalf of the Debtors except as provided in the Budget and Carve-Out.**

See id., ¶ 5(b).

iv.     **Modification of Automatic Stay.  Unless otherwise ordered by the Court, the automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the Trustee to:  (a) receive and collect payments and proceeds in respect of the Collateral, including any Cash Collateral or adequate protection payments, and for the Trustee to apply and/or setoff the same in accordance with the Bond Documents, or as otherwise provided under the terms and provisions of this Interim Order; (b) apply any bond funds in its possession in**

accordance with the terms of the Bond Documents; (c) exercise, upon the occurrence of a Termination Date, all rights and remedies provided for hereunder and under applicable non-bankruptcy law, and to take any or all of the following actions without further order of or application to this Court: (i) terminate the Debtors' use of Cash Collateral; (ii) declare all Adequate Protection Obligations owed to the Trustee to be immediately due and payable; (iii) set off and apply immediately any and all amounts in accounts maintained by the Debtors with the Trustee or against the Adequate Protection Obligations owed to the Trustee; (iv) take any other actions or exercise any other rights or remedies permitted under the Bond Documents, this Interim Order, and/or applicable law to effect the repayment and satisfaction of the Obligations and Adequate Protection Obligations owed to the Trustee, including but not limited to pursuit of an action to foreclose upon the Collateral and/or the appointment of a receiver; provided, however, that the Trustee shall provide three (3) business days' written notice (the "Waiting Period") (by facsimile, telecopy, electronic mail, or otherwise) to the U.S. Trustee, counsel to the Debtors, and counsel to any Committee prior to exercising any enforcement rights or remedies in respect of the Collateral and/or Adequate Protection Collateral (other than the rights described in clauses (i) or (ii) above (to the extent they might be deemed remedies in respect of the Collateral and/or Adequate Protection Collateral) and other than with respect to freezing any deposit accounts or securities accounts maintained by the Trustee), during such Waiting Period the Debtors shall have a right to cure the underlying default giving rise to a Termination Date to the extent that such default arises under paragraph 4(a) of this Interim Order and is capable of being cured. The rights and remedies of the Trustee specified herein are cumulative and not exclusive of any rights or remedies that they may otherwise have.  Any challenge to the Trustee's enforcements rights set forth in clauses (c)(i)-(iv) of this paragraph shall be limited to a determination as to whether a Termination Date has occurred.

See id., ¶ 12.

v.  **Lien/Claim Challenge.**

a.  The Debtors' Stipulations shall be binding upon the Debtors, all persons, creditors, and each party in interest, including any Committee (but with respect to the Committee,

subject only to subparagraph (b) of this paragraph 17), in all circumstances.

b.  Notwithstanding anything contained herein to the contrary, the extent, validity, priority, perfection, and enforceability of the Obligations, the Liens, the existence (or the lack thereof) of Claims and Defenses, and all acknowledgments, admissions, and confirmations of the Debtors and their affiliates contained in the Debtors' Stipulations, are for all purposes subject to the rights of the Committee to timely and properly file a complaint pursuant to Bankruptcy Rule 7001 seeking to assert Claims and Defenses or to challenge the Debtors' Stipulations (collectively, the "Challenges"); provided, however, that any such complaint must be timely and properly filed with this Court within 60 days of formation of the Committee (but in no event later than 120 days after entry of this Interim Order) (the "Challenge Period").  Upon the expiration of the Challenge Period without a complaint being properly filed (or with respect to the Challenges asserted in the complaint, if a timely filed complaint does not result in a final and non-appealable order of this Court with respect to the Challenges that is inconsistent with clauses (i) through (v) of subparagraph (c) of paragraph 17), the Debtors' Stipulations not subject to such Challenges shall be binding upon the Committee, and any and all Claims and Defenses not subject to such Challenges against any of the Released Parties shall be deemed, without further notice to or order of the Court, to have been forever relinquished, released, and waived as to such Committee, and if such complaint is timely and properly filed on or before such date, any and all of the Debtors' Stipulations, and Claims and Defenses against any of the Released Parties, shall be deemed, immediately and without further action, to have been forever relinquished, released, and waived as to such Committee, except with respect to such of the Debtors' Stipulations and Claims and Defenses expressly asserted in such complaint and only to the extent provided in a final and non-appealable order of this Court with respect to such Challenges that is inconsistent with clauses (i) through (v) of subparagraph (c) of paragraph 17.  Nothing in this Interim Order shall address or confer standing upon any Committee or any other person or entity to bring, assert, commence, continue, prosecute, or litigate any Claims and Defenses against any Released Party.

c.  If no such complaint as to the Debtors' Stipulations and Claims and Defenses is properly filed within such time period,

or such timely filed complaint does not result in a final and nonappealable order of this Court that is inconsistent with clauses (i) through (v) of this subparagraph, then (i) the Obligations not subject to any such complaint shall constitute allowed secured claims for all purposes in the Chapter 11 Cases and any subsequent cases or proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceedings if any Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code (each, a "Successor Case"), (ii) the Liens not subject to any such complaint shall be deemed legal, valid, binding, enforceable, perfected, first priority liens not subject to recharacterization, subordination (except as expressly specified in this Interim Order as to the Carve-Out and First Lien Adequate Protection Liens) or avoidance for all purposes in the Chapter 11 Cases and any Successor Case, (iii) the release of the Claims and Defenses against the Released Parties not subject to any such complaint shall be binding on all parties in interest in the Chapter 11 Cases and any Successor Case, (iv) the Debtors' Stipulations not subject to any such complaint shall be binding on all parties in interest in the Chapter 11 Cases and any Successor Case; and (v) the Obligations, the Liens, releases of the Claims and Defenses against the Released Parties, and prior payments on account of or with respect to the Obligations shall not be subject to any other or further claim, cause of action, recharacterization, objection, contest, setoff, defense, or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of any Debtor.

See id., ¶ 17.


## II.    INTRODUCTION

3.    In 1998, the Home borrowed more than $28 million through the sale of bonds to finance improvements to its facilities.  The loan is evidenced by promissory notes executed by the Debtors in favor of the Trustee, and the loan is secured by a first-priority mortgage lien upon and security interest in substantially all of the Debtors' real and personal property.  As a result, the Trustee is the Debtors' principal secured creditor.  The Trustee acts on behalf of beneficial owners of the bonds, the majority of whom are individual investors.  In November 2011, the

Debtors stopped making the required loan payments to the Trustee, and they have not made any loan payments since.  As of the Petition Date, the total amount owed to the Trustee is approximately $23.8 million. During the time when no loan payments were being made to the Trustee, the Debtors continued making payments to other creditors.  Notwithstanding the existence of events of default under the governing documents, the Trustee has communicated regularly during this two year period with the Debtors and their management and professionals, encouraged the Debtors to explore alternatives for improving operations and for restructuring the Debtors' debt, and deferred exercising any of its remedies.

4.    The Debtors need to use the Trustee's cash collateral to continue operations during these Chapter 11 Cases.  Following substantial negotiations among the parties and their professionals conducted in good faith and at arms' length, the Trustee has consented to the use of its cash collateral pursuant to the terms and conditions set forth in the Proposed Interim Order. In light of the circumstances summarized above, the Debtors believe that the terms and conditions contained in the Proposed Interim Order are reasonable, warranted, and consistent with the Bankruptcy Code.  Entry of the Proposed Interim Order will enable the Debtors to continue operations during these Chapter 11 Cases and provide the Debtors an opportunity to reorganize or dispose of their assets in an orderly fashion.  Absent approval of the Proposed Interim Order, the Debtors' ability to proceed in these Chapter 11 Cases is highly uncertain.

### III.    JURISDICTION AND VENUE

5.    The United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections

105, 361, 362, and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule

4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## IV.   BACKGROUND

### A.   The Debtors' Business

6.      The Debtors commenced these cases (the "Chapter 11 Cases") by filing voluntary

petitions for relief under Chapter 11 of the Bankruptcy Code on April 25, 2014 (the "Petition

Date").   Each Debtor is continuing in the management and possession of its business and

properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

As of the date hereof, no request has been made for the appointment of a trustee or examiner and

an official committee of unsecured creditors (the "Committee") has not yet been appointed.

7.      The Home is a 501(c)(3) tax-exempt, charitable Pennsylvania nonprofit

corporation formed in 1869.   It owns and operates a continuing care retirement community

known as "Deer Meadows Retirement Community", which is located at 8301 Roosevelt

Boulevard, Philadelphia, Pennsylvania.

8.      The Home offers 126 living accommodations, which vary in size, for independent

living and personal care. The Home presently also has 206 skilled nursing beds in the nursing

and rehabilitation center that offers short and long term care. In 2008, the skilled nursing center

opened an Airway Unit that offers short and long term care for ventilator-dependent individuals.

Personal care is licensed by the Pennsylvania Department of Welfare.  The Skilled Nursing and

Rehabilitation Center is certified by Medicare and Medicaid and is licensed by the Pennsylvania

Department of Health.   In total, 491 residents can make the Deer Meadows Retirement

Community their home.

9.    For 145 years, the mission of the Home has been to provide quality continuing care living facilities and support services for its adult population regardless of race, ethnicity, national origin, gender or creed.  The Home is a thoughtful, forward-looking and active leader in the aging services network.  The Home strives to excel in the care and services it provides, which include short-term and long-term skilled rehabilitation and nursing care, personal care and independent living for the older adult population.  The Home and its leadership continuously attempt to anticipate and meet the expectations all of its stakeholders, especially the residents and patients it serves.   Its stated core values are: "compassion (caring for those it serves with kind, heartfelt, and genuine concern); creativity (continuous improvement through innovation and teamwork); integrity (dedication to doing what is right); quality (excellence in service to others; and respect (highest regard for the worth and right of others)."

10.    The Foundation is a 501(c)(3) tax-exempt charitable Pennsylvania nonprofit corporation formed in 1997 to conduct, develop and expand fundraising, endowment, asset management and related activities on behalf of the Home and affiliated entities.

**B.    The Debtors' Bond Debt and Negotiation of the Interim Order**

11.    The Trustee is successor indenture trustee under the Trust Indenture, dated as of April 15, 1998, between the Philadelphia Authority for Industrial Development (the "Authority") and First Union National Bank ("First Union"), as bond trustee, pursuant to which the Authority issued (i) its Health Care Facilities Revenue Bonds Series 1998A (The Baptist Home of Philadelphia) in the aggregate principal amount of $25,825,000.00, and (ii) its Health Care Facilities Revenue Bonds Series 1998B (The Baptist Home of Philadelphia) Extendable Rate Adjustable Securities in the aggregate principal amount of $2,550,000.00 (together, the "Bonds").

12.    Pursuant to the Loan Agreement, dated as of April 15, 1998, the Authority loaned the proceeds of the Bonds to the Home for the purpose of, among other things, financing alterations, additions, and improvements to the Home's health care facilities.

13.    Contemporaneously with the execution and delivery of the Trust Indenture and the Loan Agreement, the Authority assigned and transferred to First Union, as trustee, all of the Authority's right, title, and interest in and to the Loan Agreement as well as all payments thereunder, to be held in trust, as part of the security for payment of the Bonds.

14.    To evidence the Home's obligations under the Loan Agreement, the Debtors executed and delivered two master promissory notes (the "Notes") to First Union, as master trustee, in the respective principal amounts of $25,825,000.00 and $2,550,000.00, pursuant to the Master Trust Indenture (as supplemented, the "Master Indenture"), dated as of April 15, 1998, between the Debtors and First Union.

15.    Pursuant to the Master Indenture, the Debtors granted the master trustee a security interest in, among other things, all of the rights, titles, and interests of the Debtors in and to the "Pledged Revenues" (as defined in the Master Indenture), including but not limited to all revenues of the Debtors from whatever source derived, accounts, general intangibles, documents, instruments, chattel paper, and all proceeds of the foregoing.

16.    Pursuant to the Mortgage and Security Agreement (the "Mortgage"), dated as of April 15, 1998, between the Home and First Union, as master trustee, the Home granted the master trustee a mortgage lien upon certain real property and a security interest in certain personal property, all as more specifically described in the Mortgage.  The Mortgage was recorded on April 21, 1998, in the Office of the Commissioner of Records for Philadelphia County, Pennsylvania.  Certain financing and continuation statements also were filed with the

Secretary of the Commonwealth of Pennsylvania and the Department of Records for Philadelphia County, Pennsylvania.

17.     The Trust Indenture, the Bonds, the Loan Agreement, the Notes, the Master Indenture, and the Mortgage (and all amendments or supplements thereto) are referred to herein collectively as the "Bond Documents".    All collateral granted or pledged by the Debtors pursuant to any Bond Document and all prepetition and postpetition proceeds therefore collectively shall be referred to herein as the "Collateral".

18.     Pursuant to the Loan Agreement, the Debtors are required to make monthly loan payments to the Trustee to cover scheduled payments of principal of and interest on the Bonds. The Debtors have not made monthly loan payments to the Trustee since November 2011. Failure to make payment constitutes an event of default under the Loan Agreement.   The occurrence of an event of default under the Loan Agreement constitutes an event of default under the Trust Indenture and the Master Indenture.  As of March 31, 2014, the outstanding principal and accrued interest under the Bond Documents was $23,867,289.45, comprising principal in the amount of $22,735,000 and accrued interest in the amount of $1,132,289.45.   In addition, the Debtors are obligated to pay additional interest, fees, and expenses, including but not limited to attorneys' fees and expenses, incurred in connection with the enforcement and collection of the Bonds, which accrue pre-petition and post-petition.

19.     The Debtors' obligations under the Bond Documents and the Bonds (collectively, the "Obligations") are secured by valid, perfected, first priority liens upon and security interests (collectively, the "Liens") in the Collateral, including any pre-petition cash or cash proceeds of the pre-petition Collateral (the "Cash Collateral").

20.    The Debtors and the Trustee have agreed that the Debtors may use the Cash Collateral under the terms and conditions set out in the Proposed Interim Order.  The Debtors hereby incorporate the Proposed Interim Order into this Motion by reference.[1]

## V.    SUMMARY OF RELIEF REQUESTED

21.    The Debtors seek interim, and then final, approval of the terms set forth in the Proposed Interim Order, which, *inter alia*:

a.    authorizes the Debtors, pursuant to 11 U.S.C. § 363(c), to use Cash Collateral pursuant to the terms and conditions of the Proposed Interim Order; and

b.    authorizes the Debtors, pursuant to 11 U.S.C. §§ 361 and 363, to provide adequate protection with respect to the Cash Collateral, to compensate the Trustee for any loss or diminution in the value of the Cash Collateral resulting from the Debtors' use of the Cash Collateral and the imposition of the automatic stay.

22.    In addition, the Debtors request that the Court: (i) schedule a Final Hearing, pursuant to Federal Rule of Bankruptcy Procedure 4001, for not later than fourteen (14) days after the entry of the Interim Order, to consider entry of a Final Order approving the terms of the Interim Order on a final basis; and (ii) approve the Debtors' proposed notice procedures with respect to the Final Hearing.

23.    By a separate motion for expedited hearing, filed concurrently with this Motion, the Debtors are requesting that the Court schedule an expedited interim hearing for consideration of this Motion and the attached Proposed Interim Order as soon as is reasonably possible.

---

[1] In the event of any inconsistencies between the Proposed Interim Order and this Motion, the Proposed Interim Order shall govern.

## VI.    BASIS FOR RELIEF

### A.    The Debtors' Urgent Need for Use of the Cash Collateral

24.    Without access to the Cash Collateral, the Debtors would not have sufficient available cash to continue operations during the Chapter 11 Cases.  The Cash Collateral will, subject to an approved budget, be used to fund the Debtors' various operating expenses and professional fees as well as insurance, taxes, Chapter 11 fees and other costs.

25.    The Trustee has stated that it would not consent to the use of Cash Collateral except upon the terms and conditions of the Proposed Interim Order.

26.    Without the use of Cash Collateral, the Debtors would suffer immediate and irreparable harm and would likely be required to cease operations immediately.  At a minimum, inability to use Cash Collateral would eliminate or significantly decrease the likelihood of a successful orderly reorganization or disposition of the Debtors' assets in Chapter 11, and would not be in the best interest of the Debtors, their estates or their creditors, or – most importantly, from the Debtors' perspective – the residents and patients of the Home.  In lieu of giving the Trustee relief from the automatic stay, the Debtors wish to provide adequate protection of the liens and security interests of the Trustee in Cash Collateral, as set forth in the Proposed Interim Order.

### B.    The Debtors' Use of Cash Collateral under the Proposed Interim Order

27.    Attached to the Proposed Interim Order is a budget (the "Budget") for the 13-week period from the Petition Date.   The Budget may be extended or modified from time to time by the Debtors with the prior written consent of the Trustee without further order of the Court or notice to any other parties.

28.    The Debtors' use of Cash Collateral is subject to and governed by the terms of the Budget, and the Trustee shall have no obligation to permit the use of Cash Collateral other than in accordance with the Budget and as set forth in the Interim Order.   The Debtors, however, shall be permitted to use the Cash Collateral in an amount of up to: (i) five percent (5%) in excess of the budgeted amount (the "Budgeted Amount") for any specific lien item (except Professional Fees as hereinafter defined) ("Line Item") originally identified in the Budget for any Weekly Period, without reference to any prior week or future week Line Item Budgeted Amount; and (ii) five percent (5%) in excess of the Cumulative Amount originally identified in the Budget for any Weekly Period, provided that the aggregate amount of such weekly variances does not exceed ten percent (10%) of the Cumulative Amount identified in the Budget for any Monthly Period (collectively, the "Permitted Variance").   For the avoidance of doubt, the Budget may provide for the use of Cash Collateral to pay certain Professional Fees, but solely in the amounts and during the time period (including all Professional Fees accrued through such time period) provided for therein.   Notwithstanding anything to the contrary set forth in the Budget, Professional Fees contemplated in the Budget shall be paid solely to the extent that the professionals' respective retainers paid prior to the Petition Date are exhausted.  For purposes of the Interim Order, (i) "Cumulative Amount" means, with respect to any Weekly Period or Monthly Period contained in the Budget, the aggregate amount of all expenditure line items set forth in such Budget for such period; (ii) "Weekly Period" means any calendar week; and (iii) "Monthly Period" means any four (4) consecutive calendar weeks; provided, however, that Monthly Periods shall be calculated on a non-rolling basis such that, upon the expiration of a four calendar week Monthly Period, such Monthly Period shall expire and a new Monthly Period shall commence.  For each Weekly Period and Monthly Period, the Permitted Variance shall be

measured as of Monday immediately following the end of each Weekly Period and Monthly

Period. <u>See</u> Proposed Interim Order, ¶ 3.

29.    Under the terms of the Proposed Interim Order, the use of Cash Collateral shall

terminate without further order of the Court upon the occurrence of a "<u>Termination Date</u>"

(written notice of the occurrence of the Termination Date shall be provided by the Debtors to the

U.S. Trustee, any Committee, and counsel to the Trustee, but the failure to provide such notice

shall not be a condition to the occurrence, or effectiveness, of the Termination Date).    A

Termination Date shall occur on the earliest to occur of:

<blockquote>

i.    the date that is forty-five (45) days after the Petition Date, if the Debtors have not obtained entry of the Final Order on or before such date;

ii.    the date that an application is filed by the Debtors seeking to amend, modify, supplement, or extend the Interim Order without the prior written consent of the Trustee, or the date of entry of any order reversing, amending, supplementing, staying, vacating, or otherwise modifying the Interim Order without the prior written consent of the Trustee;

iii.    the date any material provision of the Interim Order shall for any reason cease to be valid and binding or any Debtor shall so assert in any pleading filed in any court;

iv.    the date an application is filed by any Debtor for the approval of any superpriority claim or any lien in any of the Chapter 11 Cases which is *pari passu* with or senior to the Liens, the Adequate Protection Liens (as hereinafter defined), or the Adequate Protection Priority Claims (as hereinafter defined) without the prior written consent of the Trustee;

v.    the date of the commencement of any action by any person against the Trustee with respect to the Bond Documents, including, without limitation, any action to invalidate, surcharge, avoid, disallow, or subordinate any Obligations and/or Liens;

vi.    the date a plan of reorganization or liquidation is filed by any Debtor without the prior written consent of the Trustee that does not propose to pay in full in cash all amounts owed under the Bond Documents on the effective date of such plan; and

</blockquote>

> vii.    the date any of the Chapter 11 Cases shall be dismissed or
> converted to a case under chapter 7 of the Bankruptcy Code or any
> Debtor shall file a motion or other pleading seeking the dismissal
> of any of the Chapter 11 Cases pursuant to section 1112 of the
> Bankruptcy Code or otherwise.

See id., ¶ 4(a).

30.    A Termination Date shall also occur upon five (5) business days written notice
from the Trustee to the Debtors (a copy of which shall promptly be provided by the Debtors to
the U.S. Trustee and any Committee, but the failure of which shall not be a condition to the
occurrence of, or effectiveness of, the Trustee's notice to the Debtors) upon (or following) the
occurrence of any of the following:

> i.    any stay, amendment, reversal, vacatur, or modification of this Interim
> Order;
>
> ii.    the commencement of any action (including leave to commence any
> action) by any party in interest other than the Debtors against the Trustee
> with respect to the Bond Documents, including, without limitation, any
> action to invalidate, surcharge, avoid, disallow, or subordinate the
> Obligations and/or the Liens;
>
> iii.    the payment by any Debtor in respect of any prepetition claim without the
> prior written consent of the Trustee;
>
> iv.    the date of entry of an order granting relief from the automatic stay
> applicable under section 362 of the Bankruptcy Code to the holder or
> holders of any security interest, lien, or right of setoff (other than any
> other secured creditor) to permit foreclosure, possession, setoff, or any
> similar remedy with respect to any assets of any Debtor that have a value
> in excess of $100,000 in the aggregate;
>
> v.    the date a trustee under chapter 11 of the Bankruptcy Code, a responsible
> officer, or an examiner with enlarged powers relating to operating the
> business (powers beyond those set forth in section 1106(a)(3) and (4) of
> the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code shall
> be appointed or elected in any of the Chapter 11 Cases or any Debtor shall
> file a motion or pleading seeking the appointment of any such trustee
> under chapter 11;

    vi.  the date that is ten (10) days after the Petition Date, if the Debtors and the Trustee have not commenced an adversary proceeding against Beneficial Mutual Savings Bank;

    vii.  the date that is forty-five (45) days after the Petition Date, if the Court has not entered an order (the "<u>Bidding Procedures Order</u>"), pursuant to section 363 of the Bankruptcy Code, authorizing the Debtors to conduct an auction for the sale of substantially all of the Debtors' assets and approving bidding procedures in connection therewith (which bidding procedures and bidding procedures order shall be in form and substance acceptable to the Trustee);

    viii.  the date that is 90 days after the Petition Date, if the Debtors have not conducted an auction of substantially all of the Debtors' assets;

    ix.  the date that is 120 days after the Petition Date, if the Debtors have not consummated a sale of substantially all of their assets in accordance with an order pursuant to section 363 of the Bankruptcy Code (in form and substance acceptable to the Trustee) (the "<u>Sale Order</u>") or obtained entry of an order of confirmation of a plan (which plan shall be acceptable to the Trustee in accordance with the Bond Documents) under section 1129 of the Bankruptcy Code;

    x.  the date that the Collateral is subject to surcharge or marshaling;

    xi.  the date the Debtors use Cash Collateral not contemplated by the Budget (subject to the Permitted Variance); or

    xii.  the failure of the Debtors to comply with any terms of the Interim Order, the order approving the bidding procedures, or the other approving the sale of substantially all of the Debtors' assets.

See <u>id.</u>, ¶ 4(b).

During the five (5) business days between written notice of the Termination Date and the Termination Date itself, the Debtors shall have a right to cure the underlying default giving rise to the Termination Date under paragraph 4(b) to the extent that such default is capable of being cured.

31.    Unless otherwise ordered by the Court, the Debtors' authority to use the Cash Collateral shall automatically terminate upon the occurrence of a Termination Date without further order or relief from the Court unless waived in writing by the Trustee.  Upon the

occurrence of a Termination Date, all accrued interest, fees, and expenses due under the Bond

Documents and all other Adequate Protection Obligations (as hereinafter defined) shall, in each

instance, be immediately due and payable, and the Trustee shall have all rights and remedies

provided in the Interim Order and under applicable law.  Notwithstanding anything in the Interim

Order or the occurrence of a Termination Date, all of the rights, benefits, and protections

provided to the Trustee under the Interim Order shall survive a Termination Date and shall

continue until the Debtor either has paid in full or refinanced the Obligations in their entirety.

The Debtors shall be required to comply with the Bankruptcy Code, the Bankruptcy Rules, or

any order of the Court for continued use of Cash Collateral during the notice period required

under subsection (b) of paragraph 4 of the Proposed Interim Order and shall limit expenditures

only to ordinary course expenditures that are actual and necessary to operate and maintain the

Debtors' business.  Notwithstanding anything contained in the Interim Order, the Trustee shall

have no obligation to allow the Debtor to use any Cash Collateral following a Termination Date.

See id., ¶ 4(c).

32.    Notwithstanding the occurrence of a Termination Date, upon the Trustee's written

request and subject to the objection procedures set forth in subparagraph 4(d) of the Proposed

Interim Order, the Debtors shall continue to implement a sale of substantially all of the Debtors'

assets in accordance with the Bidding Procedures Order and/or the Sale Order and, to the extent

the Bidding Procedures Order and/or the Sale Order have not been entered as of the occurrence

of a Termination Date, the covenants contained in subparagraphs (i) through (o) of paragraph 10

of the Interim Order.  The Debtors shall have five business days from receipt of any such request

by the Trustee to file a written objection with the Court solely as to the reasonableness of the

Trustee's request and a motion for an expedited hearing on the Debtors' objection.  If an

objection to the Trustee's request is filed by the Debtors in accordance with subparagraph 4(d), the Trustee's request to continue the sale process shall be subject to approval by the Bankruptcy Court.  For the avoidance of doubt, in the event that the Trustee requests the continuance of the sale process, the Trustee shall not be deemed to be directing, or in control of, the sale or the sale process.  See id., ¶ 4(d).

33.    From and after the Petition Date, all proceeds of the Collateral and/or Adequate Protection Collateral (as hereinafter defined), including, without limitation, all of the Debtors' existing or future cash and Cash Collateral, shall not, directly or indirectly, be used for (i) any payments, expenses, or disbursements of the Debtors; or (ii) compensation and reimbursement of fees and expenses payable pursuant to sections 330 and 331 of the Bankruptcy Code and payable to attorneys, accountants, investment bankers, financial advisors, or other professional persons retained by the Debtors or any Committee and permitted or awarded pursuant to an order of the Court (collectively, "Professional Fees"); except for those payments, expenses, and/or disbursements that are expressly permitted under the Interim Order or other orders entered by the Court and are consistent with the Budget (subject to the Permitted Variance).  For the avoidance of doubt, the Budget may provide for the use of Cash Collateral to pay any certain Professional Fees, but solely in the amounts and during the time period provided for therein.  To the extent the Budget references any amounts payable for Professional Fees, such reference shall not be construed as consent to the allowance of any of the amounts referred and shall not affect the right of any party in interest to object to the allowance and payments of any such amounts. Professional Fees shall be paid solely in accordance with the Budget and/or from the Carve-Out (as defined in paragraph 9 of the Proposed Interim Order).  See id., ¶ 5(a).

34.     No administrative expense claims, including Professional Fees, shall be charged or assessed against or recovered from the Collateral or the Adequate Protection Collateral (including the Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or otherwise by, through, or on behalf of the Debtors except as provided in the Budget and Carve-Out.  See id., ¶ 5(b).

35.     No Cash Collateral (including amounts subject to the Carve-Out) may be used directly or indirectly by any of the Debtors, any Committee, or any other person or entity to (i) object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of the Obligations, (ii) assert or prosecute any Claims and Defenses against the Trustee or its predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, (iii) prevent, hinder, or otherwise delay the Trustee's assertion, enforcement, or realization on the Collateral, Cash Collateral, the Adequate Protection Obligations, or the Adequate Protection Liens in accordance with the Interim Order, (iv) apply to any court for an order authorizing the use of the Cash Collateral except on the terms of:  (A) the Interim Order, (B) the Budget (subject to the Permitted Variance), (C) the Final Order, or (D) any customary "first day" orders that the Trustee has consented to in writing, or (v) apply to the Court for authority to approve superpriority claims or grant liens in the Collateral, the Adequate Protection Collateral, or any portion thereof that are senior to, or on parity with, the Adequate Protection Liens, the Adequate Protection Priority Claims, or the Liens, unless all obligations under the Bond Documents, this Interim Order, and the Final Order have been paid in cash in full.  See id., ¶ 5(d).

## C.     The Trustee's Adequate Protection Pursuant to the Proposed Interim Order

36.     Pursuant to section 363(c)(2) of the Bankruptcy Code, "The trustee may not use, sell, or lease cash collateral . . . unless - (A) each entity that has an interest in such cash collateral

consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).

37.     The Trustee has consented to the Debtors' use of the Cash Collateral provided that the Proposed Interim Order, which includes certain adequate protection provisions in favor of the Trustee, is approved by the Court as the Interim Order.  These provisions are intended to provide adequate protection of the Trustee's interests in the Collateral, including to the extent applicable the Cash Collateral, and adequate protection on account of the imposition of the automatic stay, equal to the amount of Cash Collateral used and the aggregate diminution in the value of the Trustee's interests in the Collateral (the "Adequate Protection Obligations").

38.     Accordingly, the Trustee seeks authority to grant the Trustee the adequate protection as set forth the Proposed Interim Order, including:

> a.      Adequate Protection Payments.  As adequate protection, the Debtors are authorized and directed to pay the Trustee ongoing payments in cash on a current basis, no less than monthly, and including any amounts incurred prior to the Petition Date, of the reasonable and documented fees, costs, and expenses of the Trustee in connection with the Chapter 11 Cases (including, without limitation, the fees and expenses of Reed Smith LLP as counsel to the Trustee and CohnReznick LLP as financial advisor to the Trustee).  All of the amounts to be paid pursuant to this paragraph shall be paid regardless of whether such amounts accrued prior to the Petition Date or after the Petition Date, whether or not such amounts are included in the Budget (and the Budget shall be adjusted accordingly), and shall be paid without further motion, fee application, or order of the Court.

See id., ¶ 6(a).

> b.      Replacement Liens and Superpriority Claim.  The Trustee is hereby granted (i) valid, enforceable, non-avoidable, and fully perfected, first priority postpetition security interests and liens (effective and perfected upon the date of entry of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, or other agreements or instruments) (the "Adequate Protection Liens") in and upon all property of the Debtors (other than any claims or causes of action arising under chapter 5 of the Bankruptcy Code), now existing or hereafter acquired, including, without limitation, all accounts, accounts receivable, inventory, goods, contract

21

rights, instruments, documents, chattel paper, patents, trademarks, copyrights and licenses therefor, intellectual property, general intangibles, payment intangibles, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, vehicles, real property (including all facilities), fixtures, leases, money, investment property, deposit accounts, securities accounts, books and records, all commercial tort claims and other causes of action, all Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of all of the foregoing (collectively, the "Adequate Protection Collateral"), and (ii) should the adequate protection described above prove to be insufficient, first priority superpriority administrative expense claims under section 507(b) of the Bankruptcy Code (the "Adequate Protection Priority Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726 (to the extent permitted by law), 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims arise in the Chapter 11 Cases or in any subsequent case or proceedings under the Bankruptcy Code that may result therefrom.  The Adequate Protection Liens and the Adequate Protection Priority Claims are subject and subordinate to (i) those valid, enforceable, unavoidable, and properly perfected liens existing on the Petition Date with priority over the Liens, and (ii) on and after the occurrence of a Termination Date, payment of the Carve-Out in accordance with the terms and conditions set forth herein.  The Adequate Protection Liens and Adequate Protection Priority Claims (A) shall not be subject to sections 506, 510, 542, 549, 550, or 551 of the Bankruptcy Code or otherwise or the "equities of the case" exception of section 552 of the Bankruptcy Code (in the case of section 506(c) of the Bankruptcy Code and the "equities of the case" exception of section 552 of the Bankruptcy Code, subject to entry of the Final Order), (B) shall be senior in priority and right of payment to any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, and (C) shall be valid and enforceable against any trustee or any other estate representative appointed or elected in the Chapter 11 Cases, or in any other proceedings related to any of the foregoing (each, a "Successor Case"), and/or upon the dismissal of the Chapter 11 Cases.

See id., ¶ 6(b).

    c.    Right to Credit Bid.  The Trustee shall have the right to "credit bid" some or all of the Obligations in one or more bids during any sale of the Collateral under section 363(b)(1) of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

See <u>id.</u>, ¶ 6(c).

    d.    <u>Further Adequate Protection</u>.  Nothing in this Interim Order waives any rights of the Trustee to request at any time that the Court provide additional or further protection of its interests in the Collateral (including the Cash Collateral) or seeking further or additional adequate protection and the ability of the Debtors or any other party in interest to oppose any such relief.

See <u>id.</u>, ¶ 6(d).

39.    The Debtors believe that the adequate protection granted under the Interim Order as proposed is reasonable under the circumstances, and will fairly protect the Trustee from any diminution in value of the Cash Collateral.  In addition, the Debtors believe that granting the Trustee such adequate protection is necessary to induce the Trustee to consent to the Debtors' use of the Cash Collateral.

40.    In addition, the Debtors submit that the provision for limited challenge rights as highlighted above is a necessary feature of the adequate protection package requested by the Trustee, without which the Trustee would not have consented to the use of Cash Collateral.  This type of provision, which still allows for a Committee investigation and challenge period, is reasonable in light of the circumstances of these cases and the benefits that will flow from the Debtors' ability to use the Cash Collateral.

## VII.  <u>NEED FOR INTERIM APPROVAL AND SCHEDULING OF INTERIM HEARING</u>

41.    By a motion for expedited hearing filed concurrently with this Motion, the Debtors are requesting that the Court conduct an expedited interim hearing on this Motion and authorize them (from and after entry of the Interim Order and pending the Final Hearing) to use the Cash Collateral on an interim basis pursuant to the terms of the Proposed Interim Order.

The Debtors' interim access to Cash Collateral is necessary to enable them to safeguard the welfare of residents and patients as well as protect the estates' assets from potential diminution in value and, consequently, will benefit the creditor body as a whole. Accordingly, the Debtors' proposed interim relief is necessary to avoid immediate and irreparable harm.

42.     The Debtors are requesting that the Court schedule an expedited interim hearing for consideration of this Motion and the Proposed Interim Order for the earliest possible date on which the Court is available.

## VIII.   REQUEST FOR FINAL HEARING

43.     The Debtors request that the Court set a date for the Final Hearing that is as soon as reasonably possible following entry of the Interim Order, but in no event earlier than fourteen (14) days following the service of this Motion, and fix a deadline applicable to objections, if any.

## IX.   NOTICE

44.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known, by facsimile, e-mail, overnight courier, and/or hand delivery: (i) the office of the United States Trustee; (ii) parties entitled to notice pursuant to Local Bankruptcy Rule 1002-2(d); (iii) all known parties asserting liens on the Debtors' assets; (iv) counsel to the Trustee; and (v) the twenty (20) largest unsecured creditors for each of the Debtors (collectively, the "Initial Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given. Following the entry of the Interim Order and scheduling of the Final Hearing, the Debtors will immediately provide notice of the Motion and a copy of the Interim Order, and notice of the Final Hearing, to (i) the Initial Notice Parties and (ii) any party that has filed a request for notice in the Chapter 11 Cases within twenty-four (24) hours of the entry of the Interim Order.

## No Prior Request

45.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Interim Order, substantially in the form of the Proposed Interim Order attached as Exhibit "A" hereto: (i) granting this Motion on an interim basis; (ii) authorizing the Debtors, on an interim basis, to use the Cash Collateral pursuant to the terms of the Interim Order, and take such actions as may be necessary to carry out the terms of the Interim Order; (iii) scheduling a Final Hearing and approving the Debtors' proposed notice procedures; and (iv) granting such other and further relief as the Court may deem appropriate.

Dated:  April 25, 2014                    COZEN O'CONNOR

                                          /s/ John T. Carroll, III
                                          John T. Carroll, III
                                          Eric L. Scherling
                                          1900 Market Street
                                          Philadelphia, PA 19103
                                          Telephone:  (215) 665-2000
                                          Facsimile:  (215) 665-2013
                                          jcarroll@cozen.com
                                          escherling@cozen.com

                                          *Proposed Counsel for Debtors and Debtors-in-Possession*